## No. 8963.

### C. Zimmermann et al., Executors, vs. Justin J. Langles.

| | |
|---|---|
| 36 | 65 |
| 46 | 473 |
| 36 | 65 |
| 50 | 89 |
| 36 | 65 |
| e108 | 131 |

A purchaser of real estate and other property, on time, is relieved from the obligation of making a tender and consignment, to relieve himself from interest after maturity, where the vendor himself brings, before maturity of the notes, an action to annul the sale; but owes such interest from the finality of the judgment rejecting the demand in nullity in default of a tender and consignment. Article 2559, R. C.C., applies to cases in which the suit to evict is not brought by the vendor, but by others.

The executors of a surviving wife have no right to sue for the recovery of the whole amount of notes belonging equally to her succession and to that of her husband, whose heirs of age are recognized and put in possession. They can sue only to recover the half of the notes accruing to her succession.

The purchaser failing to pay at the termination of the suit to annul the sale, a suit became necessary to coerce payment.

In the event of such suit, the fees of the attorneys employed must be paid by the purchaser at the rate agreed upon in the aggregate of the capital and interest due at the time of the filing of the petition and due the succession represented by the executors.

APPEAL from the Civil District Court for the Parish of Orleans, *Rightor* J.

---

*W. B. Koontz* and *T. Gilmore & Sons* for Plaintiffs and Appellees.
*Henry Denis* and *A. B. Phillips* for Defendant and Appellant.

The opinion of the court was delivered by

BERMUDEZ, C. J.   The defendant appeals from a judgment against him on two notes, drawn by himself, to his own order and by him indorsed, in blank, secured by vendor's privilege and special mortgage, bearing eight per cent interest from date to payment.   The judgment allows five per cent attorneys fees, on the amount sued for and costs of suit.

The defendant contends that, while he does not dispute, nay admits, owing the capital of the notes with interest from date to maturity, he cannot be condemned to pay the same to the *plaintiffs*, who have no title to them and that, under no contingency, can he be subjected to pay interest from maturity, and, besides, attorneys fees, under the exceptional limitations of the case.

The notes were furnished in settlement of the purchase price of the half interest of N. A. Baumgarden in certain real estate and other property, sold to defendant on December 31, 1877.   The notes bear that date and are payable one and two years afterwards, *at* the Union National Bank in this city.

On the day of maturity of the first note, the defendant went, with a notary and witnesses, to the bank to pay the same; on being informed that the notes had not been left there for collection, he deposited the amount with the bank.   After a while, the note not having been presented, the deposit was withdrawn.   When the second note matured, a year later, the defendant again pro ceeded to the same bank, with the means in hand to pay it, inquired for it, and was told that it had not been deposited there for collection.

Several months after the sale by Baumgarden to Langles, viz: on May 21, 1878, Baumgarden having been interdicted, his wife was appointed his curatrix.   In that capacity, previous to the maturity of the first note, viz: on the 30th December, 1877, she brought suit against Langles, on several grounds, to have the sale annulled.   The judgment rejecting her demand was affirmed by this court, in April, 1883.   35 A. 442.

Shortly after, Langles published an advertisement calling on the holders of the notes to produce them and expressing his willingness to pay them in capital with interest to maturity.

Prior to the final decision of the case, viz: April 23, 1879, Baumgarden died, leaving a widow and four children, three of age and one a minor, the issue of their marriage.

His widow died on February 5, 1882, leaving as her only heirs the same four children; she left a will, appointing the plaintiffs herein, her

executors and one of them tutor of the minor, Lilly, both of whom qualified in said capacities.

The heirs of age of N. A. Baumgarden have been recognized as entitled to three-fourths of his estate and were ordered to be put in possession.

An inventory was taken of the property left by Mrs. Baumgarden. It shows the same to consist of her half of the property, once composing the community between her and husband, appraised at $31,911 12½; the notes sued on forming part thereof, her share therein, valued at $19,450.

Those notes having been found in a tin box in the possession of Mrs. Baumgarden, continued to be kept therein deposited, in a bank subject to the order of the Civil District Court, Division B, before which her succession had been opened.

They are the notes sued on in the present action brought by the executors of Mrs Baumgarden, shortly after the final decision of the suit for the nullity of the sale, April 24, 1883.

Under such a state of facts, several questions present themselves:

1. Was the defendant bound, at the maturity of the notes, to have made a tender and deposit of the face and interest to date, of each note?

2. Was he bound previous to the institution of this suit, on the notes, to have made a tender in whole or in part?

3. Is he liable for interest from date to payment?

4. Is he chargeable with attorney's fees for the prosecution of the suit.

### I.

The suit to annul the sale, was brought by Mrs. Baumgarden, as *curatrix*, on December 30, 1878, *before* the maturity of the first note. The petition and citation were served on the same day on the defendant. After the death of Mrs. Baumgarden, the suit was prosecuted by her executors.

The suit was equivolent to a formal notice by the vendor, to Langles, that payment of the notes would not be received and would be refused if offered to be made.

Indeed, how could the curatrix have consistently received the price of a sale, the invalidity and nullity of which she had alleged and sought judicially.

The law does not require the idle ceremony of a tender, where the creditor refuses payment, such refusal implying a waiver of it. 27 A. 111. Teutonia Bk. vs. Loeb.

Neither does the law make it essential that where a tender has been made or waived, the debtor *should* consign the amount tendered, or which, without the waiver, would have been tendered. It leaves it *optional* with the debtor to do so or not at his pleasure. C. P. 412; R. C. C., 2167.

The failure to make the consignment does not defeat the benefit to be derived from a tender, or from one which has been waived. 27 A. 210. Alter vs. Shepperd.

When the consignment has not taken place, the debtor continues to be answerable for the amount tendered. It would be no excuse to him that he has lost or was robbed the amount, or that the bank with which he did business and in which the amount was on deposit, to his own credit, has become insolvent, or the like.

When the consignment has been legally made, the dedtor is exonerated from further liability. The money or property remaining on deposit, at the charge and risk of the creditor. Should it perish, or be spoiled, or its value diminished without the fault of the debtor, the loss would fall on the creditor.

When the tender has been made or waived, it is immaterial who is the custodian of the money or the property, the bank or the creditor; as in the case of money, the bank would not pay interest on it to the creditor, provided in either case, such money be forthcoming on the demand of the creditor. The debtor, in either case, would not be responsible for interest, between the time the tender was made or waived and that of the demand for payment.

The case might be different had the suit in eviction been brought by a *third* person, by no agency of the vendor, and the latter being unable to furnish security.

The law on that subject and the adjudications of courts expounding it, find their application in such instances, but have no effect in cases in which, like the present one, abstention from payment is the direct consequence of the positive act of the vendor himself. R. C. C. 2559. The principle is, in such cases, that the purchaser, being thereby authorized by the vendor, is justified in withholding the price and is not liable for interest as long as the act continues, but is so after the danger of eviction has ceased, his title quieted and he has failed to pay. Potthier, Vol. 28, 286; 13 L. 338; 1 L. 70.

## II.

While it is true that the purchaser cannot be charged with interest from the maturity of the notes and during the continuance of the action

to annul the sale, it cannot be claimed, with any plausibility, that he is not liable for interest from the termination of that suit.

The defendant's theory, that tender and consignment cannot be required from a debtor who does not know his creditor, surely does not obtain in a case like this, where he knew that the notes belonged to Baumgarden, or his representatives. The information conveyed him on that subject was complete in the suit to annul the sale. The judgment in that case by this Court became final and executory on the 16th of April, 1883, when the last judicial day expired. From that date must the defendant again pay interest.

The half owned by the succession of Mrs. Baumgarden could and should have then been paid, and not having been acquitted, the executors had a right to demand payment of it judicially. Amicable demand was not denied and not at issue. The defense urged shows that it would have been unnecessary.

As the executors of Mrs. Baumgarden did not represent the succession of her husband, and as his heirs have not joined them in this suit, judgment could not be rendered against defendant for the *whole* amount of the two notes, with interest even from judicial demand. Judgment could have gone *only* for the half of the notes belonging to the succession of Mrs. Baumgarden, with interest from the termination of the suit to annul.

It is no excuse for the defendant to say that the other half of the notes belong to the heirs of N. A. Baumgarden. Three of those heirs are of age, the other is a minor, represented by a qualified tutor. Payment of half of the notes to the plaintiffs can in no way affect their interest as co-owners. The notes were, and are still, under the control of the Civil District Court, Division B. That court could have ordered the executors to receive payment of the half they represented, and to credit the notes accordingly. Payment thus made and interest would have extinguished half of the debt and authorized a cancellation of the mortgage inscription *pro tanto* and thus have completely protected and benefited the defendants to that extent in every respect.

### III.

The last question which remains to be determined concerns the liability of the defendant for attorney's fees.

We have settled that one-half of the notes belong to the succession of Mrs. Baumgarden, which is legally represented by her executors, plaintiffs herein; that the defendant was in default in not tendering the amount due previous to the institution of this suit to that succes-

sion. The institution and prosecution of the proceeding to compel payment became a necessity, brought on himself by the defendant. Under the terms and conditions of the sale, it was agreed that the purchaser would, in case of suit, pay the fees of the attorney employed, at the rate of five per cent. For such fees he is therefore liable, but only on the amount claimed and accruing to the succession of Mrs. Baumgarden.

The district judge erred in rendering judgment for the plaintiff for the *whole* amount of the notes, with interest thereon from date to payment, and attorney's fees thereon. He should have rendered judgment for one-half of the notes, with interest from date to maturity, and from the termination of the suit to annul till paid, and attorney's fees on the same. To that extent the judgment should be modified.

It is therefore ordered and decreed that the judgment appealed from be amended so as to read as follows:

It is ordered and adjudged that the plaintiff, the executors of Theresa Baumgarden, recover from the defendant, J. J. Langles and for her succession, the following amounts:

1. Seven thousand five hundred dollars ($7500), with eight per cent interest thereon per annum from the 31st of December, 1877, to the 31st of December, 1878; and on the same amount from the 16th of April, 1883, till paid.

2. A similar sum ($7500), with similar interest from December 31, 1877, to December 31, 1879, and on a similar amount from April 16, 1883, till paid.

3. Five per cent attorney's fees on the aggregate of said sums in capital and interest at the date of filing of petition herein.

It is further ordered and decreed that the rights of the heirs of age and of the minor, Lilly, representing the succession of N. A. Baumgarden, be reserved for future action.

It is further ordered that the defendant pay costs in the lower court, and the plaintiffs and appellees those of the appeal in this Court.

Rehearing refused.